DAVIS, Chief Judge.
Jeffrey H. Atwater, Chief Financial Officer of the State of Florida (“the CFO”), and the Florida Department of Financial Services (“the Department”) petition this court for writs of prohibition to prevent the circuit court for the Twentieth Judicial Circuit and the circuit court for the Thirteenth Judicial Circuit from requiring the CFO to appear personally at show cause hearings in three separate cases. The show cause proceedings were instituted in Hillsborough and Lee Counties after the CFO failed to comply with the circuit courts’ orders requiring him to release funds held by the Department in the State School Fund to respondent National Equity Recovery Services, Inc. (“NERS”), and to the individual respondents with claim interests represented by NERS. After the circuit courts issued their orders, the CFO filed these petitions, claiming that the circuit courts exceeded their jurisdiction in requiring him to release funds and in attempting to hold him in contempt for the failure to do so. This court stayed the circuit court proceedings pending resolution of these petitions. Because the facts and legal issues are related, we consolidate these cases solely for the purpose of this opinion. We grant the petitions for the reasons that follow.
The instant proceedings arose from the entry of final summary judgments of foreclosure against the homeowners of three properties, pursuant to which the clerks of court sold the properties at foreclosure sales.[1] Disbursements of the sale proceeds yielded surplus funds, which remained in the clerks’ registries for five years, after which they were remitted to the CFO as unclaimed property pursuant to section 43.19, Florida Statutes (2008).[2]
Sometime after the funds were transferred to the CFO’s control, respondent NERS filed a postjudgment appearance in each of the original foreclosure proceedings and notified the courts that it had become the assignee of the former home *597 owners’ interests in the surplus funds. NERS requested that the courts direct the CFO to disburse the funds. The courts granted NERS’ motions and issued orders directing the CFO to release the funds in each case in two separate checks, a flat fee check to NERS and a check for the balance to the former homeowners.[3] A few months later, on NERS’ motions, the courts issued orders to show cause why the CFO should not be held in contempt and possibly sanctioned by imposition of costs and attorney’s fees for his failure to comply with these orders and release the funds. The CFO did not file any pleadings or appear at any of the hearings on any of NERS’ motions. Instead, the CFO filed these petitions for writ of prohibition.
Statutory Construction
• Section 48.19
A review of the record shows that the surplus funds were transferred to the CFO pursuant to section 43.19. This statute provides for the disposition of funds that have been litigated or are uncontested but have remained unclaimed in the clerk of court registry for five years or longer. Section 43.19 also establishes the procedures for any person, firm, or corporation claiming a right to such funds, stating in pertinent part as follows:
(1) In every case in which the right to withdraw money deposited as hereinbe-fore provided has been adjudicated or is not in dispute and the money has remained so deposited for 5 years or more unclaimed by the person, firm, or corporation entitled thereto, on or before December 1 of each year the judge, or one of the judges, of the court shall direct that the money be deposited with the Chief Financial Officer to the credit of the State School Fund, to become a part of that fund, subject to the right of the person, firm, or corporation entitled thereto to receive the money as provided in subsection (3).
[[Image here]]
(3) Any person, firm or corporation entitled to any of the money may obtain an order directing the payment of the money to the claimant on written petition to the court from which the money was deposited or its successor, and written notice to the state attorney of the circuit wherein the court is situate, whether or not the court is a circuit court, and proof of right thereto, and the money deposited shall constitute and be a permanent appropriation for payments by the Chief Financial Officer of the state in obedience of such orders.
But transferring the funds pursuant to section 43.19 was in error. The surplus funds were the result of judicial foreclosure sales, and therefore section 45.032, Florida Statutes (2008), is the applicable statute.
• Section 45.032
In 2006, the legislature revised the provisions of chapter 45 and created section 45.032 to provide for disbursement of surplus funds after a judicial foreclosure sale. See ch. 2006-175 § 2, at 6-8, Laws of Fla.; see also § 45.031(7)(d) (“If there are funds remaining after payment of all disbursements required by the final judgment of foreclosure and shown on the certificate of disbursements, the surplus shall be distributed as provided in this section and ss. 45.0315-45.035.”). See generally The Florida Bar, Creditors’ and Debtors’ Practice in Florida § 3.69 (2007). Section 45.032 became effective July 1, 2006. Establish *598 ing the proper procedures for the clerk, the court, and any person claiming a legal right to the surplus to follow, section 45.032 provides in pertinent part:
(3) During the 60 days after the clerk issues a certificate of disbursements, the clerk shall hold the surplus pending a court order.
(a) If the owner of record claims the surplus during the 60-day period and there is no subordinate lienholder, the court shall order the clerk to deduct any applicable service charges from the surplus and pay the remainder to the owner of record....
[[Image here]]
(c) If no claim is filed during the 60-day period, the clerk shall appoint a surplus trustee from a list of qualified surplus trustees as authorized in s. 45.034. Upon such appointment, the clerk shall prepare a notice of appointment of surplus trustee and shall furnish a copy to the surplus trustee....
(4) If the surplus trustee is unable to locate the owner of record entitled to the surplus within 1 year after appointment, the appointment shall terminate and the clerk shall notify the surplus trustee that his or her appointment was terminated. Thirty days after termination of the appointment of the surplus trustee, the clerk shall treat the remaining funds as unclaimed property to be deposited with the Chief Financial Officer pursuant to chapter 717.
Nothing in the record indicates that a surplus trustee was appointed or that the procedures set forth in section 45.032 were otherwise followed.
• Retrospective Application of Procedural Statutes
Because section 45.032 was enacted after the foreclosure sales resulting in the surplus proceeds[4] but prior to the transfers, we must determine retroactivity. Compare Town of Lake Park v. Grimes, 963 So.2d 940 (Fla. 4th DCA 2007) (applying the preamendment procedures to the cases because all of the events took place prior to the amendment creating section 45.032), with Suarez v. Edgehill, 20 So.3d 410, 412 (Fla. 3d DCA 2009) (explaining that because the events took place after July 1, 2006, the case was controlled by section 45.032).
“A procedural statute is ‘to be applied retrospectively’ and is ‘to be applied to pending cases.’ ” Mortimer v. State, 100 So.3d 99, 103 (Fla. 4th DCA 2012) (quoting Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla.1994)). Section 45.032 is procedural in nature. See Alamo Rent-A-Car, 632 So.2d at 1358 (“[S]ubstantive law prescribes duties and rights[,] and procedural law concerns the means and methods to apply and enforce those duties and rights.”); see also Fla. H.R. Just., HB65 (2006) Staff Analysis (Apr. 20, 2006) (explaining that the statute was created to provide a procedure for distribution of surplus funds to the former property owner after a judicial foreclosure sale). When the amendment took effect on July 1, 2006, the funds were in the court registry.[5] After the amendment’s effective date, the funds were transferred to the CFO. Therefore, section 45.032 governed the disposition of the surplus funds even though the events that generated them occurred before the effective date *599 of the statute. See, e.g., Mortimer, 100 So.3d at 103 (holding that the application of a procedural rule of evidence to events that occurred before the effective date of the statute did not violate the prohibition against applying laws ex post facto). Additionally, because the two statutes seemingly covered the same subject matter, the more specific provisions of section 45.032, rather than the more general provisions of section 43.19, applied to the pending surplus funds. See generally Parole Comm’n v. Smith, 896 So.2d 966, 970 (Fla. 2d DCA 2005) (“[I]n construing conflicting statutes, a specific statute covering a particular subject area controls over a statute covering the same and other subjects in more general terms.”).
• Surplus Funds Become Unclaimed Property
Had the circuit court and the clerk applied section 45.032 retrospectively after it took effect in 2006, a surplus trustee would have been appointed after no one claimed the funds. See § 45.032(3)(c). If the surplus trustee had been unable to locate the owner of the surplus within a year, “the clerk [would have] treat[ed] the remaining funds as unclaimed property to be deposited with the Chief Financial Officer pursuant to chapter 717.” See § 45.032(4). Therefore, the surplus funds ultimately would have been transferred to the CFO in 2007. Once the funds were remitted to the CFO, the claimant or his or her representative would then have been required to file an unclaimed property request for the surplus funds with the Department. See § 717.124(1), Fla. Stat. (2008) (“Any person, excluding another state, claiming an interest in any property paid or delivered to the department under this chapter may file with the department a claim on a form prescribed by the department and verified by the claimant or the claimant’s representative.”). Once the funds were in the CFO’s possession, the final determination as to the disposition would have been solely within the purview of the CFO and the Department.

Authority to Regulate Unclaimed Funds

Article 4, section 4(c) of the Florida Constitution vests the CFO with exclusive authority to examine and approve all claims for unclaimed funds under chapter 717. See also Atwater v. Citibank, F.S.B., 96 So.3d 1010, 1012 (Fla. 3d DCA 2012) (“The Department of Financial Services is vested with the sole authority to make financial determinations as to unclaimed funds.”). Additionally, “[i]t is and has been the intent of the [legislature that, pursuant to [section] 717.124, the department determines the merits of claims for property paid or delivered to the department under this chapter.” § 717.1242(1). Although this provision expressly relates to probate proceedings, the rationale and intent of the legislature are applicable to civil claims regarding unclaimed property. Under section 717.138, the legislature specifically provided the department with the authority to “administer and provide for the enforcement of [chapter 717].” The Department was granted the “authority to adopt rules pursuant to [sections] 120.536(1) and 120.54 to implement the provisions of this chapter.” § 717.138; see also § 717.124. Once entitlement to the surplus funds as unclaimed property has been determined, the funds are then payable to the beneficiary by state warrant drawn by the CFO. See § 215.965, Fla. Stat. (2008) (“Except as provided in ... s. 717.124(4)(b) ..., all moneys in the State Treasury shall be disbursed by state warrant, drawn by the Chief Financial Officer upon the State Treasury and payable to the ultimate beneficiary.”).

Circuit Court’s Jurisdiction

In these cases, the funds, after being held by the respective clerks of courts *600 for five years or longer, were transferred to the CFO to become part of the State School Fund. The homeowners and NERS moved the courts for orders directing the CFO to release the unclaimed funds. The courts, acting under the authority of section 43.19(3), granted the motions and issued the orders. These acts were beyond the courts’ authority. Once the funds were transferred to the CFO, albeit under the wrong statute, the correct and applicable provisions of section 45.032 provided that the surplus funds became unclaimed property controlled by chapter 717, which vests the CFO and the Department alone with the authority to make the final determination as to the disposition of the unclaimed surplus funds. See § 717.1242. Because the CFO has the exclusive power to distribute the surplus funds, the courts acted in excess of their authority and jurisdiction when they directed the release of the funds, issued orders to show cause, and attempted to hold the CFO in contempt. Accordingly, we grant the petitions for writs of prohibition in these cases, vacate the stays of the circuit court proceedings that we previously imposed, and vacate the circuit courts’ orders to show cause.
However, we must observe that the extensive litigation of these extraordinary writ proceedings and countless hours of judicial review in this court could have been avoided had the parties acted appropriately in the circuit courts. The contempt proceedings arose from the CFO’s failure to respond to the circuit courts’ orders. The CFO, out of respect for the judiciary, should have filed a limited appearance in the circuit courts and advised the courts of the proper procedures. For example, in case 2D12-3285, the CFO issued a check to the former homeowner for the entire surplus amount on January 20, 2012, after the owner filed a pro se claim with the Department and after the court issued its first order directing payment. Also, NERS’ various motions to the courts to direct the release of the funds apparently were driven by the company’s attempt to sidestep the fee structure cap for claimant’s representatives like NERS.[6] Based on prior court proceedings, NERS, at least *601 in its corporate capacity, was aware of the procedures delineated in section 45.032 yet did not bring this to the courts’ attention. See, e.g., Nat’l Equity Recovery Servs., Inc. v. Williams, 962 So.2d 977 (Fla. 3d DCA 2007). Moreover, NERS failed to inform the courts that it filed claims with the Department and the CFO for the funds in dispute and was either waiting for a ruling or had withdrawn the claim.
Petitions for writs of prohibition granted; stays vacated; orders to show cause vacated.
KELLY and BLACK, JJ., Concur.

. These former homeowners are the individual respondents Armantina Pelaez, Christino Romero, and Jasseth Blackwood. They transferred their rights to collect any surplus funds remaining after the foreclosure sale disbursements to NERS, a claimant’s representative registered with the Department.

. The operative date for determining the relevant statute year is the date NERS initiated these proceedings and filed various motions requesting that the court release the surplus funds. Although NERS filed the initiating motions in different years (2008, 2010, and 2011), because there have been no material changes to the statutes, the 2008 versions, the year the first motion was filed, will be used.

. The courts' orders to release are as follows: in 2D 12-3260, $2100 to NERS and $2504.73 to Armantina Pelaez; in 2D 12-3536, $1800 to NERS and $2694.30 to Christino Romero; in 2D 12-3285, $1500 to NERS and $1993.72 to Jasseth Blackwood.

. In 2D12-3260 and 2D12-3285 the foreclosure sales took place in 2003. In 2D12-3536 the foreclosure sale took place in 2005.

. The surpluses were not transferred to the CFO until 2008 (2D 12-3260), 2009 (2D12-3285), and 2011 (2D12-3536), with NERS filing a motion for release of the surplus funds months thereafter.

. The House of Representatives Staff Analysis summary indicates that the bill was created to address the problems and abuses related to handling surpluses. The analysis specifically notes the following:
It has been reported that, with the growing number of foreclosures that may result in a surplus, there is a growing number of entrepreneurs who are offering services to property owners subject to foreclosure. Some of these entrepreneurs are receiving significant profits while the property owners they contract with receive little of their equity in the property.
Fla. H.R. Just., HB65 (2006) Staff Analysis 2 (Apr. 20, 2006).
Section 45.033(3)(a) provides that if the surplus is transferred or assigned, the grantee/as-signee also must notify the owner that an attorney or other representative is not needed to recover surplus funds in a foreclosure. Once in the CFO’s possession as unclaimed property, section 717.135(2)(a) "[l]imit[s] the fees and costs for services [rendered by a claimant's representative] to 20 percent per unclaimed property account held by the department. ... Total fees and costs on any single account owned by a natural person residing in this country must not exceed $1,000.” To exceed the $1000 limit, the claimant’s representative must
[ fjully disclose that the property is held by the Bureau of Unclaimed Property of the Department of Financial Services pursuant to this chapter, the mailing address of the bureau, the Internet address of the bureau, the person or name of the entity that held the property prior to the property becoming unclaimed, the date of the holder’s last contact with the owner, if known, and the approximate value of the property, and identify which of the following categories of unclaimed property the claimant’s representative is seeking to recover....
§ 717.135(2)(b).