ALTENBERND, Judge.
William Crescenzo appeals an order denying his “Motion to Direct Chief Financial Officer to Return Funds to Court.” *1250 Although this court concludes that the circuit court properly denied this motion, we do so for reasons other than those contained in the order on appeal. This case involves the first step in the confusing process of obtaining unclaimed funds from the Chief Financial Officer (CFO) under chapter 717, Florida Statutes (2011), after those funds have been deposited with the CFO by a court pursuant to section 43.19, Florida Statutes (2011). By statute, the circuit courts play a role in this process, but once the judicial branch has deposited such funds with the executive branch, separation of powers affects the role of both the court and the CFO.[1]
In the style of this opinion, we describe the order on appeal as an order denying a “petition for order directing payment of $13,857.69 in unclaimed money deposited in accordance with section 43.19, Florida Statutes.” Mr. Crescenzo’s pro se motion is intended to accomplish this general result but in fact sought an order from the trial court compelling the CFO to perform certain actions when the CFO was not a party to the proceeding. The CFO, who from this record has received other similar claims from Mr. Crescenzo, intervened in the trial court action to protect his interests and to establish precedent.
Procedurally, this case is very unusual. If the CFO had not chosen to intervene in the trial court, we doubt that any active party would be listed as an appellee. There are apparently no judicial rules of procedure to assist in the filing of a claim under section 43.19. It is likely that the legislature intends the local state attorney to perform a function as if the state attorney were a party to the action. The state attorney is not a party, and it is doubtful that state attorneys are actually performing the intended function. The CFO has promulgated regulations that are useful within the context of the administrative proceeding to obtain payment under chapter 717, but those regulations should have little, if any, impact on the proceedings within the court itself.
In this opinion, we first provide a description of the lawsuit from which this proceeding arises, a lawsuit in which none of the original parties are remaining parties to this proceeding.[2] Second, we provide a description of the proceeding commenced by Mr. Crescenzo. Third, we provide a description of section 43.19 and of chapter 717. Fourth, we provide a legal analysis of the many issues presented by the parties. Finally, in the fifth section, we provide a summary of the procedure that we conclude should be used to process claims under section 43.19 and to seek payment from the CFO.
I. THE ORIGINAL PROCEEDINGS IN THE CIRCUIT COURT
In 1999, Willie Consuegra sued certain underwriters at Lloyd’s of London to resolve a dispute arising from the repair of his large truck, which was insured by Lloyd’s. The dispute, identified as case *1251 number 99-CA-003537, was referred to an umpire who apparently determined that Tampa Spring Company was entitled to be paid a storage fee on the truck of $11,375.00.[3] As a result, Judge Edward H. Ward entered an order in July 2000 that contained a provision stating “[t]hat the Defendants shall also pay as agreed the storage charges claimed by Tampa Spring Company for the Plaintiffs vehicle in the amount of $11,375.00 into the court registry as above representing the interests of such storage facility within thirty (30) days of the date of this Order.”
Tampa Spring Company was not a party in the action, but the order indicates that it was served on John Messina in care of Tampa Spring Company. It is undisputed that Lloyd’s deposited these funds into the registry of the court on August 24, 2000. For reasons not explained in the record, Tampa Spring Company never obtained these funds from the court’s registry.
The lawsuit between Mr. Consuegra and Lloyd’s continued primarily as a dispute over the payment of attorneys’ fees. That issue resulted in an opinion by this court. See Consuegra v. Lloyd’s Underwriters at London, 801 So.2d 111 (Fla. 2d DCA2001). The issue of storage, however, was fully resolved by the order in 2000. Eventually, the lawsuit was resolved and the parties dismissed the action in March 2003. Thus, since 2003 the circuit court has not had personal jurisdiction over the original parties to this action.
Because no one ever claimed the $11,375.00 from the registry of the court, in 2007 the Thirteenth Judicial Circuit Clerk of Circuit Court included this case among those in an application to the chief judge of the circuit seeking authorization to transfer the funds to the CFO. That proceeding was styled as “In the Matter of Unclaimed Court Registry Funds, Case No: 07-AF-000007.” By the time the clerk commenced this proceeding, the amount held by the clerk that was properly to be deposited with the CFO had grown to $13,857.69 with interest. On November 16, 2007, Chief Judge Manuel Menendez signed an order stating,
[T]he Clerk of this Court is hereby authorized and directed to deposit with the Chief Financial Officer of Florida to the credit of the State School Fund, the moneys described upon the attached schedule, which have been deposited in the Registry of this Court for five years or more, unclaimed by the person, firm, or corporation entitled thereto, in the described causes set forth in the Exhibit attached to the Petition.
[[Image here]]
[T]he deposit of such funds as herein ordered, shall be without prejudice to the rights of any interested party as provided by law.
As a result, the funds from this case and a long list of other cases were transferred to the CFO.
II. THE PROCEEDINGS COMMENCED BY MR. CRESCENZO
About four years later, in September 2011, John Messina as “Director of Tampa Spring Co. a/k/a Tampa Spring Company” executed an “assignment of case, lien and interests.”[4] By the assignment, for a pay *1252 ment of only $10, Interest Recovery, Inc., obtained whatever rights Tampa Spring might have to the $13,857.69 that had previously been placed in the registry of the court. Interest Recovery, Inc., is a company controlled by William Crescenzo. Interest Recovery, Inc., subsequently assigned its claim to itself and William Cres-cenzo, in exchange for $10. Thus, the corporation and Mr. Crescenzo apparently hold joint ownership of the claim to the $13,857.69.
Mr. Crescenzo is not an attorney, but he filed the pro se motion that sought to have the circuit court order the CFO to return the funds to the registry of the court. Initially, he attempted to file the motion on behalf of himself and Interest Recovery, Inc. Eventually, the court required that an attorney appear on behalf of the corporation, but Mr. Crescenzo continued to represent himself pro se.
Mr. Cescenzo and his corporation did not commence a new proceeding but rather filed this motion in case number 99-CA-003537. Of course, that case had been closed for years and neither Mr. Crescenzo nor Tampa Spring had ever been a party to that lawsuit. The CFO had never been a party. Mr. Crescenzo served copies of this motion on the attorneys for Mr. Con-suegra and Lloyd’s. Mr. Consuegra and his attorney actually appeared at one or more hearings even though they had no legal interest in the proceedings and the court had ceased to have jurisdiction over them years earlier.
In the motion, Mr. Crescenzo made two claims. First, he argued that Judge Men-endez had erred in ordering a transfer of the funds because the lawsuit had not been closed for five years when the order transferring the funds was entered in 2007. Second, he explained his claim to the funds by virtue of the assignment and sought an order from the court requiring the clerk to pay Interest Recovery, Inc., once the funds were returned by the CFO.
The motion was heard by Judge Bernard C. Silver. The CFO filed a notice of appearance with a motion to intervene, arguing that Mr. Crescenzo’s motion should be denied and raising many issues. The CFO was permitted to intervene. In the order resolving the competing motions, the court determined that Mr. Crescenzo had properly filed his motion in the old, closed circuit court file because subject matter jurisdiction and venue remained with the court under the procedure provided for in section 43.19. It also determined that the funds were ripe for deposit with the CFO in 2007 because the funds had remained deposited and unclaimed since 2000, a period that was more than five years. It then determined that the claim was invalid because it did not comply with various requirements of section 717.1351, Florida Statutes (2011). Thus, the court denied the motion for an order under section 43.19 only because the claim did not comply with section 717.1351. Mr. Cres-cenzo appealed. Oddly, his corporation, Interest Recovery, Inc., did not appeal and has not participated in these proceedings. Accordingly, the corporation is properly an appellee. See Fla. R. App. P. 9.020(g)(2).
III. A DESCRIPTION OF SECTION 43.19 AND CHAPTER 717
A. Section 43.19, Florida Statutes.
Section 43.19 is a relatively short statute, dating back to the 1930s when the state treasurer performed the functions that the CFO now performs. It provides a mechanism to manage unclaimed funds that arise from judicial proceedings. In its entirety, it states:
(1) In every case in which the right to withdraw money deposited as hereinbe-fore provided has been adjudicated or is *1253 not in dispute and the money has remained so deposited for 5 years or more unclaimed by the person, firm, or corporation entitled thereto, on or before December 1 of each year the judge, or one of the judges, of the court shall direct that the money be deposited with the Chief Financial Officer to the credit of the State School Fund, to become a part of that fund, subject to the right of the person, firm, or corporation entitled thereto to receive the money as provided in subsection (3).
(2) The direction that the money be deposited as provided in subsection (1) shall be by written order. A copy of the order shall be filed in the action in which the money was originally deposited. The order shall also be noted in the progress docket in the action, if a docket is maintained by the court.
(3) Any person, firm or corporation entitled to any of the money may obtain an order directing the payment of the money to the claimant on written petition to the court from which the money was deposited or its successor, and written notice to the state attorney of the circuit wherein the court is situate, whether or not the court is a circuit court, and proof of right thereto, and the money deposited shall constitute and be a permanent appropriation for payments by the Chief Financial Officer of the state in obedience of such orders.
(4) All interest and income that accrue from the money while on deposit with the Chief Financial Officer to the credit of the State School Fund belong to that fund.
(1) Discussion of Subsection 43.19(1).
Subsection (1) of the statute contains four concepts worth emphasizing. First, this law applies only to “every case in which the right to withdraw money deposited as hereinbefore provided has been adjudicated or is not in dispute.” Thus, in the normal case to which this statute applies, there will be an order or stipulation that specifies a quantity of money that is placed with the clerk of court for the benefit of an identified party. This case, for example, contains an order granting Lloyd’s motion to deposit this amount of money into the registry of the court for the benefit of Tampa Spring Company. As a result of this limitation, any subsequent petition to retrieve the money should normally have a single primary issue — the identity of the claimant.
Second, the transfer to the CFO occurs only after “the money has remained so deposited for 5 years or more unclaimed.” Thus, the time period is measured from the point when the money could be claimed from the registry, not from the close of the lawsuit.[5]
Third, the statute contemplates that a “judge” shall direct that the money be deposited. From the examples that we have seen, in actual practice the clerk of court submits a periodic application to the chief judge containing a list of all cases that currently have deposits more than five years old. The judge signs an order authorizing the transfer. It does not appear that any type of evidentiary hearing occurs in the process. Essentially, the matter is an administrative duty in which the judge reasonably relies on the clerk of court to identify the appropriate cases.
Fourth, the funds are “deposited” with the CFO to the “credit” of the State School Fund. While we would not wish to *1254 put too fíne a point on this, the court does not transfer ownership of this asset to the CFO; the court is placing the money on deposit with the ■ CFO while apparently retaining the right to protect the interests of the lawful owner and to determine the ultimate beneficiary of the funds.
(2) Discussion of Subsection 43.19(2).
Subsection (2) requires that the deposit order be a written order, a copy of which is maintained in the original court file. This lends credence to the argument that any petition to recover the funds, at least in the absence of a rule, should be filed in the original court file even if that file has been closed for years.
(3) Discussion of Subsection 43.19(3).
Subsection (3) contains six concepts worth noting. First, “[a]ny person, firm or corporation entitled to any of the money” may petition for a payment. The statute does not limit a claim to the specific person identified in the earlier court order.
Second, the person submits a “written petition.” Neither the statute nor any court rule explains the content of the petition, but presumably it must allege the basic facts establishing the person’s entitlement to the funds.
Third, the petition is “to the court from which the money was deposited.” Again, this is a clear indication that, although the funds are deposited with the CFO, the court retains authority to determine the person to whom the funds should be released.[6]
Fourth, the claimant must provide “written notice to the state attorney.” The statute does not require that the state attorney be served as a party or that the state attorney answer or respond to the petition. Nevertheless, the state attorney is the only officer identified in the statute to protect the interests of the state.
Fifth, the statute contemplates that the claimant must provide “proof’ to obtain an order. Whether this can be accomplished by affidavit or whether it requires an evi-dentiary hearing is unclear. But in any event the mere filing of an unsworn petition is insufficient under the statute to obtain an order of payment.
Finally, subsection (3) describes the money deposited with the CFO as a “permanent appropriation for payments” by the CFO. The reason for this is unstated in the statute. However, Florida’s Constitution states that “[n]o money shall be drawn from the treasury except in pursuance of appropriation made by law.” Art. VII, § 1(c), Fla. Const. Section 215.965, Florida Statutes (2011), generally requires that money in the state treasury be disbursed by a state warrant, drawn by the CFO, and payable to the “ultimate beneficiary.” Presumably, the “permanent appropriation,” see § 43.19(3), permits the CFO to write a warrant to the person identified as the ultimate beneficiary by the court without first obtaining a special appropriation in the annual budget from the legislature.
B. Chapter 717.
Although Florida had earlier laws addressing the escheat of property to the state, chapter 717 was a major addition, enacted in 1987 as the “Florida Disposition of Unclaimed Property Act.” Ch. 87-105, § 1, at 916, Laws of Fla. It is based on the Uniform Disposition of Unclaimed Property Act (1954). Unlike section 43.19, it is not intended to address a narrow *1255 subset of unclaimed property but rather to provide broader substantive and administrative law addressing all varieties of unclaimed property. Thus, for example, it has procedures for unclaimed bank accounts, utility deposits, and life insurance proceeds. §§ 717.106-.07, 108. Similar to funds deposited under section 43.19, the funds deposited under chapter 717 often end up in the State School Fund. See § 717.123. The fact that the funds end up in the same account, however, does not mean that they must only be removed from that fund using the same procedures.
Section 717.113 provides that property held by courts is typically “presumed unclaimed” after one year even though it is not transferred under section 43.19 for five years. The legal effect of this presumption is unclear to this court.
Section 717.124, contains an explanation of how a person makes a claim for unclaimed property under this chapter. Apparently concerned about potential abuses of this process, the statute also contains regulation of powers of attorney to recover property for others and contracts to acquire ownership of unclaimed property. §§ 717.135, .1351. These regulations apply to property reported by persons under section 717.117. Given that the judiciary is a separate branch of the government and that the funds in question here were reported under section 43.19, it is reasonable to question the application of these regulations in this case. We do not, however, reach that issue because we conclude that these provisions are not statutes that create issues to be decided by the court when a petition is filed to obtain payment of deposited funds under section 43.19.
Regulations have been promulgated to assist in filing claims under chapter 717 emanating from section 43.19 proceedings. See Fla. Admin. Code. R. 691-44.021. The portion of the regulation applicable to section 43.19 states:
(1) Petitions for funds held pursuant to Section 43.19, 732.107, 733.816 or 744.534, F.S., are to be filed initially with the court that directed the deposit of the funds with the Chief Financial Officer.
(a) Petitions proving the claimant’s right to funds held pursuant to Section 43.19, F.S., must include written notice to the state attorney of the circuit where the court is situated.
[[Image here]]
(2) If the court that directed the deposit of the funds with the Chief Financial Officer grants the petition, each claimant or claimant’s representative must file a Claim for Funds Deposited Pursuant to Section 43.19 ... Form (DFS-A4-1988), effective 11-22-09, incorporated herein by reference and available from the Florida Department of Financial Services, Bureau of Unclaimed Property, 200 East Gaines Street, Tallahassee, Florida 32399-0358.
(a) The claim form must be accompanied by a certified copy of the final order or judgment awarding the funds to each claimant, supporting documentation establishing each claimant’s right to the funds, and a government-issued photographic identification issued to each claimant.
(b) Payment for funds reported pursuant to Sections 43.19 ... will be made to the ultimate beneficiary, as provided by Section 215.965, F.S.
No copy of a Form (DFS-A4-1988) exists in this record. Oddly, we have been unable to locate such a form by searching Florida internet public records.
IV. A LEGAL ANALYSIS OF THE ISSUES RAISED BY THE PARTIES
Section 717.1401 expressly states that chapter 717 does not repeal section 43.19 *1256 but that it is “additional and supplemental.” Unfortunately, it is not obvious how to make chapter 717 supplemental to section 43.19. In this analysis, we attempt to honor both statutes to the fullest extent possible. But we admit that it is difficult to give full application to both statutes in light of the conflict between them. On appeal, the parties raise many issues. We will address the issues that merit discussion.
A. The Five-Year Period For Deposit With The CFO Is Measured From The Date The Funds Were Placed In The Registry.
As to Mr. Crescenzo’s claim that the monies were prematurely deposited with the CFO, we agree with the circuit court that the five-year period in subsection 48.19(1) is measured from the date the funds were placed in the registry of the court and not from some later date when the relevant lawsuit was dismissed or concluded. This appears to be a plain reading of subsection 43.19(1).
B. The Circuit Court Has Discretion To Allow The CFO To Intervene In A Section 43.19 Proceeding.
Mr. Crescenzo argues that the CFO lacked standing to intervene because the CFO does not own the funds at issue and will not be adversely affected by the court’s ruling. Although we disagree with Mr. Crescenzo’s argument, it is significant that the statute does not require that the claimant make the CFO a party to the proceeding. Instead, the local state attorney must be provided with notice. Under subsection 27.02(1), Florida Statutes (2011), the state attorney is authorized to defend the state in civil matters.
We conclude that the legislature prudently concluded that the interests of the state would be more cost-effectively addressed if these proceedings were monitored by a local constitutional officer. A claimant in a section 43.19 proceeding is not even required to give the CFO notice of the proceeding. The CFO should not be forced to send a separate attorney from Tallahassee to perform this rather straightforward function.
Nevertheless, the state attorney is not required to be a party in these proceedings. If the state attorney is not adequately performing this function, it is the CFO who “keeps” all state funds, including the State School Fund. Art. IV, § 4(c), Fla. Const. The CFO clearly has an interest that may permit intervention. Cf. Atwater v. City of Cape Coral, 120 So.3d 595, 599 (Fla. 2d DCA 2013) (discussing the CFO’s responsibilities as to claims). This is a matter in the sound discretion of the trial court and may depend upon the position taken by the state attorney. We note that, unless some representative of the state is made a party to section 43.19 proceedings, there may be no party in the trial court who is adversely affected by the ruling and has the right to file a notice of appeal on behalf of the state.
C.A Section 43.19 Claim May Be Assigned In Accordance With Contract Law.
The CFO argues that Mr. Crescen-zo lacks standing and cannot file the petition in the circuit court or in this appeal. We disagree. The CFO’s argument is two-fold. First, it argues that neither Interest Recovery, Inc., nor Mr. Crescenzo has an enforceable claim by way of assignment. The CFO maintains that a claim to funds placed into the registry of the court is essentially unassignable. Second, it argues that Interest Recovery, Inc., did not appeal and that Mr. Crescenzo cannot appeal the order in the absence of this corporation. As to this second argument, the CFO cites no authority for the proposition that a co-owner of an assigned right can *1257 not appeal an adverse ruling unless both owners appeal.
As to its argument that the claim could not be assigned by Tampa Spring Company, we note that section 43.19 does not address the issue of assignment. Under the general rules of contract law, economic causes of action, contracts, and judgments have all been rather freely assignable with the parties to determine their fair value within the open market. See Kohl v. Blue Cross & Blue Shield of Fla., Inc., 988 So.2d 654, 658 (Fla. 4th DCA 2008) (“All contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates against assignment.”); Wachovia Ins. Servs., Inc. v. Toomey, 994 So.2d 980, 987 (Fla.2008) (permitting assignment of a claim for breach of fiduciary duty); Nationwide Mut. Ins. Co. v. McNulty, 229 So.2d 585, 586-87 (Fla.1969) (determining judgment from a claim not based on personal tort to be assignable where assignment was not contrary to public policy); W.S. Badcock Corp. v. Webb, 699 So.2d 859, 861 (Fla. 5th DCA 1997) (concluding that party could not bring an action on a claim that it had assigned). Most recent mortgage foreclosures seem to have been filed by plaintiffs who obtained an assignment of the mortgage, often after the loan was in default. See, e.g., Correa v. U.S. Bank N.A., 118 So.3d 952, 953 (Fla. 2d DCA 2013). In the absence of any express statutory prohibition of such assignments in section 43.19, we see no reason why this court should announce a blanket, common law rule that assignments of claims arising from funds placed into the registry of the court are contrary to public policy.
D. Chapter 717 Substantive And Procedural Requirements Do Not Apply In A Section 43.19 Proceeding.
Mr. Crescenzo argues that the trial court erred by holding that his petition should be denied for failure to comply with certain provisions of chapter 717. We agree with Mr. Crescenzo that the trial court erred in this regard but not for the reasons argued in his brief. On appeal, the CFO argues that the trial court could not compel the CFO to disburse funds or return funds, but in the trial court the CFO asked that court to enforce provisions of chapter 717 that may be applicable to administrative claims made under that chapter. We conclude that the CFO cannot have it both ways.
Nothing in section 43.19 requires the CFO to be a party to such a proceeding. The fact that section 43.19 compels the court to deposit funds with the CFO after five years does not give every such court personal jurisdiction over the CFO or subject matter jurisdiction over chapter 717 issues that may arise subsequent to the order directing the payment of the money to the claimant. We conclude that the issues to be presented on a section 43.19 petition are merely the narrow issues relating to the identity of the claimant and its entitlement to the funds. There is no reason for that court to concern itself with the requirements of chapter 717.
E. Because, In This Context, A Section 43.19 Judicial Proceeding Is A Condition Precedent To A Chapter 717 Administrative Proceeding, The Circuit Court Should Rarely, If Ever, Need To Obtain Jurisdiction Over The CFO.
Finally, the CFO argues that Mr. Crescenzo’s motion should have been denied on the additional grounds that the circuit court had no authority to order the CFO either to return these funds to the circuit court or to compel the CFO to pay the claim. We do not hold today that the *1258 circuit court could never have authority to order a return of funds.[7] But Mr. Cres-cenzo did not attempt to make the CFO a party to the section 43.19 proceeding. He did not allege any extraordinary legal basis that might require the funds to be returned to the court’s registry. Even after the CFO chose to intervene in this matter, there was no legal reason for the court to order a transfer.
The case law clearly establishes a general rule that the circuit courts should not exercise jurisdiction over the CFO, at least until the CFO has determined the claimant’s entitlement to the funds. See Atwater v. Citibank, F.S.B., Inc., 96 So.3d 1010, 1011 (Fla. 3d DCA 2012); City of Cape Coral, 120 So.3d at 600 (“Because the CFO has the exclusive power to distribute the surplus funds, the courts acted in excess of their authority and jurisdiction when they directed the release of the funds, issued orders to show cause, and attempted to hold the CFO in contempt.”). We note that the CFO voluntarily appeared in this action. The trial court had jurisdiction over his person. Even with such jurisdiction, under the basic principles recognizing the separation of powers, the circuit court has limited authority to order the CFO to perform his statutory or constitutional duties. In this case, we are merely required to hold that the trial court correctly declined to order the CFO to return funds from the State School Fund to the registry of the court when no legal justification for that action existed.
We conclude that chapter 717 is “supplemental” to section 43.19 in the sense that it provides an adequate mechanism for a person who receives an order in a section 43.19proceeding to submit a claim and receive a warrant from the CFO. Accordingly, there should rarely, if ever, be a time when a court conducting a section 43.19proceeding should need to obtain jurisdiction over the CFO in an effort to order a transfer of properly deposited funds back to the registry of the court. If a claimant has difficulty convincing the CFO to honor a court order from a section 43.19proceeding as a claim under chapter 717, it seems to us that the solution rests in either an administrative proceeding under section 717.126 or in a separate lawsuit between the aggrieved claimant and the CFO. See, e.g., Nat’l Equity Recovery Servs., Inc. v. Fla. Dep’t of Fin. Servs., 127 So.3d 1291 (Fla. 1st DCA 2013) (addressing an appeal from an administrative order). Thus, while we conclude that, at least under normal circumstances, the circuit court in the section 43.19 proceeding should not attempt to compel the CFO to obey its order, it may be entirely possible that a circuit court in a lawsuit between the claimant and the CFO could enter such an order after the CFO declined to issue a warrant on a chapter 717 claim.
Y. A SUMMARY OF THE APPROPRIATE PROCESS TO OBTAIN PAYMENT OF UNCLAIMED FUNDS FROM THE CFO AFTER DEPOSIT OF THOSE FUNDS UNDER SECTION 43.19
Section 43.19 requires a circuit court to deposit certain unclaimed funds with the CFO if they remain unclaimed for five years. The statute applies only to monies where the right to the funds has been adjudicated or is not in dispute.
*1259 We conclude that after unclaimed funds are transferred to the CFO pursuant to this section, the circuit court retains jurisdiction to enter an order directing payment of the money to a proper claimant under subsection 43.19(3). To invoke this jurisdiction, the claimant must file a petition seeking an order directing payment of the unclaimed funds that have been deposited in accordance with section 43.19.[8] Once the petition has been filed and the claimant has given notice to the local state attorney, the state attorney, although not a party, represents the interests of the State. If the state attorney wishes to challenge the petition, it would seem reasonable for the state attorney to move to intervene in the proceeding. The CFO should not be expected to discover the existence of and intervene in each of these proceedings to perform a function that the legislature has assigned to the state attorney. But the CFO has standing to intervene to protect the corpus of the State School Fund if the state attorney is not performing his or her intended role.
We further conclude that the circuit court has the discretion to accept a valid assignment of a claim for such unclaimed funds under the standard rules of contract law governing assignment. Thus, upon proper proof, the court may enter an order directing payment of the money to the claimant’s assignee. Upon proper assignment, the original claimant ceases to be the “ultimate beneficiary” under section 215.965, and the assignee assumes that role.
Thus, the circuit court has both the power and the duty to enter an order directing payment of a specific amount of money to a specific claimant, or the claimant’s as-signee, under subsection 43.19(3). We decline in this opinion to decide whether the circuit court order establishes factual determinations binding on the CFO. Obviously, there is an argument that the issues resolved by the court should be binding on the State during the administrative process seeking payment from the CFO on the court order.
The circuit court, however, does not obtain personal jurisdiction over the CFO merely because it transferred the unclaimed funds to the CFO. Even if the circuit court obtains jurisdiction over the CFO by intervention, it should not direct that funds properly transferred to the CFO be returned to the clerk of court. It should allow the CFO to issue a warrant pursuant to statute to the ultimate beneficiary.
Because the legislature intends chapter 717 to supplement section 43.19, we conclude that, after a claimant has obtained an order of payment from the circuit court at the hearing where the State’s interests are protected by the state attorney, the claimant must still make a proper claim for the issuance of a warrant from the CFO pursuant to section 717.124, and in accordance with Florida Administrative Code Rule 691-44.021.
Any issue concerning the application of any portion of chapter 717 to the unclaimed funds deposited by the court is not a matter to be resolved by the circuit court in the section 43.19 proceeding. The requirements of chapter 717 simply are not relevant issues in the section 43.19 proceeding. Instead, if the CFO imposes substantive or procedural requirements on the claimant that the claimant believes to be unenforceable, those issues should be resolved either in an administrative proceed *1260 ing under section 717.126, or by a separate lawsuit between the aggrieved claimant and the CFO. See, e.g., Nat’l Equity Recovery Servs., 127 So.3d 1291 (addressing an appeal from an administrative order).
VI. CONCLUSION
In closing, we would comment that Mr. Crescenzo’s decision to file this action in the original court proceeding appears at least permissible under section 43.19. It is, however, an odd procedure. It created great confusion both in the circuit court and in this court as to the proper parties to the proceeding. It is not within our power, but we would suggest that the circuit courts and the supreme court consider an alternative procedure for the filing of these petitions.
We also comment that this opinion addresses many issues that might ultimately warrant consideration by the supreme court. We have intentionally decided not to certify any questions because our mandate permits further proceedings that may better distill the issues for consideration by that court.
We are affirming the order of dismissal because the circuit court could not order the funds returned to Hillsborough County and, thus, could not order the clerk to pay Mr. Crescenzo under the motion that he filed. Given that this was not the reasoning of the circuit court and Mr. Crescenzo may have been able to amend his motion to state a proper petition for an order directing payment, on remand, Mr. Cres-cenzo shall be given the option to file a second petition under section 43.19.[9] If successful in that petition, he then can seek payment from the CFO under chapter 717.
Affirmed.
CRENSHAW, J., Concurs.
DAVIS, Chief Judge, Concurs specially with opinion.

. The Chief Financial Officer of the State of Florida is the agency head of the State of Florida Department of Financial Services. In this case, the attorneys for this intervener/ap-pellee have not consistently described their client as either the CFO or the agency. By using the CFO as the named appellee we are essentially treating the CFO and the agency as equivalents without deciding which should be the proper named intervener in the trial court and an appellee in this court.

. The parties to this appeal listed some of the original parties as parties to this appeal. We conclude that these listed parties are not parties over whom this court has jurisdiction. We have reconstructed the style of this case to comport with our understanding of the actual parties and their positions within the appeal.

. The umpire's report or decision is not in our record.

. The trial court never determined the validity of this assignment, and we have no reason to question its authenticity for the purposes of this appeal. Whether the language of the assignment or the limited consideration paid for the assignment affect the claim are not issues that have been addressed by the circuit court. Tampa Spring Company was not involved in the proceedings on Mr. Crescenzo’s motion or in this appeal.

. So long as a claimant sought to recover the funds more than five years from the deposit of the funds in the registry of the court, it is not obvious that a premature transfer to the CFO would affect the claimant, except perhaps for a small quantity of interest.

. This case involves a petition filed in a circuit court. The statute appears to contemplate petitions filed in a county court, as well as those filed in a circuit court. We do not address such a case in this opinion.

. In Crescenzo v. Interest Recovery, Inc., No. 2D12-312, 136 So.3d 1261, 2014 WL 1613403 (Fla. 2d DCA Apr. 23, 2014), for example, a case released on the same day as this case, the facts appear to involve funds that were improperly transferred to the CFO. Funds that were erroneously transferred from the judiciary to the executive branch of government arguably might be an exceptional situation.

. There is no standard form to use in this situation, and we do not attempt to suggest the content of such a petition.

. We express no opinion as to whether Interest Recovery, Inc., has any remaining right to file a new petition in light of its decision to forego an appeal of the order challenged in this case.