# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D15-3184
_____

CHOICE PLUS, LLC,

    Appellant,

    v.

DEPARTMENT OF FINANCIAL
SERVICES, BUREAU OF
UNCLAIMED PROPERTY; BENGT
ROLAND DAHLQVIST, ANN-
KRISTIN DAHLQVIST BERLIN,
BARBRO BRITT MARIE LINDEN
BARKMAN, BERT ERIK GORE
LINDEN, CARL JOHAN TEGGE,
MALIN CAROLINE CHARLOTTE
TEGGE, LARS RAGNER LINDEN,
GUNVOR MARIE LINDEN WILHDE,
MARIANNE ELISABETH LINDEN
HOLM, and ANITA MARGARETHA
NYBERG,

    Appellees.

_____

On appeal from the Department of Financial Services.
Robert C. Kneip, Chief of Staff.

April 17, 2018

ROBERTS, J.

Choice Plus, LLC (Choice Plus), appeals a final order from the Department of Financial Services (the Department) denying its claim to recover funds from the estate of Mrs. Inez Eleanor Rigley that were being held by the Department. Choice Plus argues the Department improperly ignored a valid order from the Pinellas County Probate Court and made its own *de novo* determination regarding entitlement to the estate funds. We agree with Choice Plus that the Department overstepped its authority and reverse the final order.

### *Facts*

In 2005, Mrs. Rigley died in St. Petersburg, Florida. In 2007, the Pinellas County Probate Court determined that Mrs. Rigley died intestate, having no known beneficiaries. The probate court ordered "[t]hat under [section 732.107, Florida Statutes (2007)] the assets of the estate shall escheat to the State of Florida." Per section 732.107(2), Mrs. Rigley's real property was sold as provided in the Florida Probate Rules, and the proceeds were paid to the Chief Financial Officer for deposit into the State School Fund. The Department documented receipt of $98,185.79 in cash proceeds from Mrs. Rigley's estate and marked it as an "escheated estate."

Section 732.107(3) provides,

> At any time within 10 years after the payment to the Chief Financial Officer, a person claiming to be entitled to the proceeds may reopen the administration to assert entitlement to the proceeds. If no claim is timely asserted, the state's rights to the proceeds shall become absolute.

In 2013, before the ten-year deadline expired, Choice Plus took such action. Choice Plus is a private investigative agency registered with the Department as a claimant's representative. Choice Plus first petitioned the probate court to determine that ten individuals[1] (hereinafter the ten claimants), all of whom resided in

---

[1] Bengt Roland Dahlqvist, Ann-Kristin Dahlqvist Berlin, Barbro Britt Marie Linden Barkman, Bert Erik Gore Linden, Carl Johan Tegge, Malin Caroline Charlotte Tegge, Lars Ragner

2

Sweden, were Mrs. Rigley's beneficiaries. Attached to the petition to determine beneficiaries was a family genealogical chart as well as a researcher's report that included thirty-three endnotes referencing various records like death and birth records.[2] Choice Plus also petitioned the probate court to reopen the estate for administration and to declare the ten claimants were entitled to the funds deposited with the State. The Department was not a party to the probate proceedings; however, Choice Plus did notice the Attorney General's Office as required by section 733.816(3), Florida Statutes, which did not file any objections.

In two 2013 orders, the probate court reopened the estate; determined that the ten claimants were indeed beneficiaries of Mrs. Rigley's estate; delineated the share of her estate each claimant was owed; and ordered that "after providing for payment of costs and fees, the State of Florida is hereby authorized and directed to pay the funds it holds on behalf of the Estate of [Mrs. Rigley]" to the ten claimants in the proportions set out in the court's order. As the claimants' representative, Choice Plus stood to receive $21,500.53 in fees when the estate funds were paid.

Choice Plus then filed with the Department a claim on behalf of each of the ten claimants, seeking payment of each claimant's portion of Mrs. Rigley's estate funds. The claim was submitted on the Department's required form and attached the required copies of the government-issued, photographic identification of the ten claimants as well as certified copies of the probate court order demonstrating the ten claimants' entitlement to the estate funds. Choice Plus later submitted Mrs. Rigley's death certificate. Choice Plus also filed limited powers of attorney for it to act on behalf of each claimant.

---

Linden, Gunvor Maria Linden Wilhde, Marianne Elisabeth Linden Holm, and Anita Margaretha Nyberg.

[2] Copies of the documents listed in the thirty-three endnotes are not included in the record on appeal. It is not wholly clear whether or not all of these documents were filed in the probate court.

In 2014, the Department issued a Notice of Intent to deny the claim (without prejudice) as incomplete because it did not include the appropriate documents in Florida Administrative Code Rule 69I-20.0022(3)(b) (2014)[3] to connect the ten claimants to Mrs. Rigley. In essence, the Department took the position that the genealogic charts and researcher's report that had been relied upon by the probate court were too ambiguous to demonstrate the ten claimants were entitled to disbursement of Mrs. Rigley's estate funds. The Department concluded as custodian of the estate funds under The Florida Disposition of Unclaimed Property Act, chapter 717, Florida Statutes, it had authority to determine the merits of each claim for funds, and the claim as submitted failed to meet the burden of establishing entitlement to Mrs. Rigley's estate funds by a preponderance of the evidence.

Over the next two years, the parties disputed the Department's ability to deny the claim under chapter 717. The issues condensed into a purely legal question that was ultimately decided in the Department's 2015 final order on appeal. In its final order, the Department concluded that it had been vested with the sole jurisdiction to administer chapter 717 and to determine the merits of each claim for funds held in the State Treasury. The Department rejected Choice Plus's contention that it was under a ministerial duty to disburse the estate funds upon receipt of the probate court's order. Instead the Department determined that, despite the probate court's previous determination of entitlement, Choice Plus had failed to meet its burden of demonstrating entitlement to the Department by submitting the "appropriate

---

[3] Rule 69I-20.0022 provides in relevant part,

(1) Any and all persons filing a claim for unclaimed property have the burden to provide to the Department a preponderance of evidence to prove ownership and entitlement to such property being claimed[.]

For claims by beneficiaries or estates, subsection (3)(b) directs the claimant to provide "appropriate documentation to connect the claimant to the deceased apparent owner."

documentation" connecting the individual claimants to Mrs. Rigley by a preponderance of the evidence. Choice Plus appeals the final order, arguing the Department overstepped its authority. We agree.

### *Standard of Review*

As this case presents a purely legal issue, our review is *de novo*. *Kale v. Dep't of Health*, 175 So. 3d 815, 817 (Fla. 1st DCA 2015); see also § 120.68(7), Fla. Stat. (2013) (providing that a court shall remand a case or set aside an agency action when it finds that the agency "has erroneously interpreted a provision of law and a correct interpretation compels a particular action"). While an agency's interpretation of a statute that it is charged with administering is entitled to greater deference and will not be reversed unless clearly erroneous, deference is not warranted when the agency's interpretation conflicts with the plain meaning of the statute. *Kale*, 175 So. 3d at 817.

### *Escheated Funds or Unclaimed Funds*

The Department's final order rejected Choice Plus's attempt to draw a "semantic distinction" between escheated funds and unclaimed funds, finding it was a distinction without a difference in the context of this case. We disagree as the distinction *is* the difference under the facts of this case.

As aforementioned, Mrs. Rigley's estate funds were transferred to the Department through the escheat process in the Probate Code, section 732.107, Florida Statutes (2007). In 2007, when the probate court determined that Mrs. Rigley died intestate, her estate "escheated" to the State. § 732.107(1), Fla. Stat. (2007) ("When a person dies leaving an estate without being survived by any person entitled to a part of it, that part shall escheat to the state."). *Black's Law Dictionary* (10th ed.) defines "escheat," as "[r]eversion of property (esp. real property) to the state upon the death of an owner who has neither a will nor any legal heirs." Thus, unlike unclaimed funds, Mrs. Rigley's estate funds passed directly from her ownership to the ownership of the State. After a ten-year period, the State's ownership would become absolute with no other action taken so long as no purported beneficiaries had come forward. § 732.107(3), Fla. Stat. (2007).

The term "unclaimed property" is not defined in chapter 717. In *Crescenzo v. Atwater (In re Order Directing Payment of 13,857.69)*, 136 So. 3d 1248 (Fla. 2d DCA 2014), the Second DCA examined the interplay between chapter 717 and "unclaimed funds" from judicial proceedings that are deposited with the Chief Financial Officer to the credit of the State School Fund pursuant to section 43.19, Florida Statutes (2011). The Court drew a distinction between section 43.19 funds and other unclaimed funds in chapter 717, stating,

> Unlike section 43.19, [chapter 717] is not intended to address a narrow subset of unclaimed property but rather to provide broader substantive and administrative law addressing all varieties of unclaimed property. Thus, for example, it has procedures for unclaimed bank accounts, utility deposits, and life insurance proceeds. §§ 717.106–.07, 108. Similar to funds deposited under section 43.19, the funds deposited under chapter 717 often end up in the State School Fund. *See* § 717.123. The fact that the funds end up in the same account, however, does not mean that they must only be removed from that fund using the same procedures.

136 So. 3d at 1254-55.

We regard the section 732.107 funds here in the same manner. The fact that section 732.107 funds are addressed within the ambit of chapter 717 does not mean that they lose their distinct character and become subject to the entirety of chapter 717. The Department's argument disregards the nature of these funds and simply assumes that because they are deposited with the Chief Financial Officer, the funds are subject to all of chapter 717. Putting oranges and apples into one large bowl does not make them all oranges.

We disagree that the Legislature intended section 732.107 funds to be treated in the same manner as all other "unclaimed property." With regard to much of the "unclaimed property" in chapter 717, the Department's role is as a custodian pending expiration of a dormancy period. *See, e.g.*, § 717.104, Fla. Stat. (2013) (outstanding traveler's checks presumed "unclaimed" after fifteen years); § 717.106, Fla. Stat. (2013) (certain bank accounts

6

presumed "unclaimed" after a period of inaction for five years); §
717.115, Fla. Stat. (2013) (unpaid wages that have not been
claimed for more than one year are presumed "unclaimed"). The
Department also receives funds from Florida Clerks of Courts as
the result of various judicial processes. *See, e.g.*, § 45.032, Fla.
Stat. (2013) (detailing the process for surplus judicial funds, which
may become "unclaimed property to be deposited with the Chief
Financial Officer pursuant to chapter 717"). One obvious
difference between the aforementioned "unclaimed" funds and the
section 732.107 funds is the section 732.107 funds are never
referred to as "unclaimed." While section 732.107 funds may be
unclaimed in a colloquial sense, the fact that they escheat to the
State upon a determination of intestacy means that the funds are
never without an identifiable or locatable owner like other forms
of "unclaimed" property in chapter 717. This is not a distinction
without a difference.

### *The Department's Authority*

The view that escheated funds are a distinct subset of
"unclaimed funds" as that term is generally used in chapter 717 is
confirmed by the fact that the only reference to section 732.107 in
chapter 717 is in section 717.124. Section 717.124 details the
process for filing a claim for unclaimed property, which includes
the requirement to file the claim on the prescribed claim form and
the requirement to include a copy of a government-issued,
photographic identification. § 717.124(1), Fla. Stat. (2013).
Notably, section 717.124 does not include any requirement that
the claimant independently prove entitlement to the funds to the
Department. Section 717.124(8) provides,

> This **section** applies to all unclaimed property reported
> and remitted to the Chief Financial Officer, including, but
> not limited to, property reported pursuant to ss. 43.19,
> 45.032, 732.107, 733.816, and 744.534.

(Emphasis added.)

The plain statutory language is clear that only section 717.124
applies to section 732.107 funds. The Department cannot point to
any statutory language stating the entirety of chapter 717 applies
to section 732.107 funds. The specific use of the term "section" as

7

opposed to chapter means that only section 717.124 applies to funds transferred pursuant to section 732.107. *See Maggio v. Fla. Dep't of Labor & Employment Security*, 899 So. 2d 1074, 1080 (Fla. 2005). Indeed, if the entirety of chapter 717 applied to funds transferred under section 732.107, then the language in section 717.124(8) would be redundant and meaningless. *State v. Goode*, 830 So. 2d 817, 824 (Fla. 2002) ("In addition to the statute's plain language, a basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.").

The Department's error here lies in presuming the estate funds are subject to all of chapter 717. Simply because Choice Plus had to file an "Unclaimed Property Claim" under section 717.124 in order to have the Department disburse Mrs. Rigley's estate funds does not make the estate funds themselves "unclaimed" and subject to all provisions of chapter 717. The Department's error in interpreting section 717.124(8)'s narrow provision as subjecting the estate funds to all of chapter 717 caused it to apply the wrong standards and improperly deny the claim.

Chapter 717 gives the Department a panoply of tools in order to determine the merits of a claim of ownership to "unclaimed property" that come to the Department through various means. *See, e.g.*, § 717.1244, Fla. Stat. (2013) ("In rendering a determination regarding the merits of an unclaimed property claim, the department shall rely on the applicable statutory, regulatory, common, and case law."); § 717.1301, Fla. Stat. (2013) (the Department has the authority to make investigations and examinations to enforce chapter 717); § 717.1341, Fla. Stat. (2013) ("No person shall receive unclaimed property that the person is not entitled to receive."); § 717.126, Fla. Stat. (2013) ("[T]he burden shall be upon the claimant to establish entitlement to the property by a preponderance of the evidence. Having the same name as that reported to the department is not sufficient, in the absence of other evidence, to prove entitlement to unclaimed property."). However, *Crescenzo* properly recognized that simply because funds often end up in the same account does not mean that they must be removed from that account in the same manner. *Crescenzo*, 136 So. 3d at

1255 (distinguishing section 43.19 funds from other chapter 717 funds).

While the Department's duty to determine the merits of a claim makes sense with regard to its role as custodian over certain types of "unclaimed property," it does not make sense to apply the panoply of tools in chapter 717 to funds that escheat to the State under section 732.107. Escheat funds revert to the State after the probate court determines there are no beneficiaries. If potential beneficiaries wish to come forward, they do not go directly to the Department, but must first go to the probate court, which has jurisdiction over administration of the estate for a determination on entitlement. If the probate court determines the beneficiaries are entitled, it orders the Department to disburse the estate funds in the appropriate proportions. The oversight of the probate court means there is no need for the Department to independently determine whether the beneficiaries are entitled to the estate funds. The Department's interpretation of chapter 717 as requiring a second, independent determination of entitlement renders the probate court's function meaningless.

The Department takes the position that, as custodian of the estate funds in its possession, it had more than a ministerial duty to disburse the estate funds upon receipt of the proper claim form, government identification, and probate court orders. Rather, the Department references its duty to "determine the merits of the claims." Section 717.1242(1), Florida Statutes (2013), provides,

> It is and has been the intent of the Legislature that, pursuant to s. 26.012(2)(b), circuit courts have jurisdiction of proceedings relating to the settlement of the estates of decedents and other jurisdiction usually pertaining to courts of probate. It is and has been the intent of the Legislature that, pursuant to s. 717.124, the department determines the merits of claims for property paid or delivered to the department under this chapter. Consistent with this legislative intent, any estate or beneficiary, as defined in s. 731.201, of an estate seeking to obtain property paid or delivered to the department under this chapter must file a claim with the department as provided in s. 717.124.

9

*See also Atwater v. City of Cape Coral*, 120 So. 3d 595, 599 (Fla. 2d DCA 2013) (holding once surplus judicial funds were transferred to the Chief Financial Officer, the provisions of section 45.032 provided that the surplus funds became unclaimed property controlled by chapter 717, such that under section 717.1242 the Chief Financial Officer and the Department alone had the authority to make the final determination as to the disposition of the unclaimed funds).

We do not disagree that the Department carries a responsibility to ensure that funds are properly disbursed to the rightful owner. Unlike the funds in *City of Cape Coral*, here there is no explicit reference to chapter 717 in section 732.107. *Compare* § 45.032(4), Fla. Stat. (2013) ("Thirty days after termination of the appointment of the surplus trustee, the clerk shall treat the remaining funds as **unclaimed property to be deposited with the Chief Financial Officer pursuant to chapter 717**") *with* § 732.107(2), Fla. Stat. (2013) (" Property that escheats shall be sold as provided in the Florida Probate Rules and the proceeds paid to the Chief Financial Officer of the state and deposited in the State School Fund."). We also find the Department's reliance on *Bondi v. Brito*, 159 So. 3d 369 (Fla. 2d DCA 2015), inapplicable to the instant case as *Bondi* was limited to the authority of the circuit court to order the Chief Financial Officer to appear at circuit court proceedings relating to Chief Financial Officer's declination to disburse funds received under section 43.19, Florida Statutes, despite the circuit court's order to do so. *Bondi* specifically provided, "We take no position regarding the validity or legitimacy of the circuit court's orders regarding entitlement to or transfer of the unclaimed funds." *Id.* at 373.

We do not read section 717.1242(1) as giving the Department independent jurisdiction over the merits of section 732.107 funds. Rather, section 717.1242 confirms that the probate court has jurisdiction to determine entitlement to the estate. This is clear in the plain language of section 732.107(3), which directs a party claiming entitlement to first go to the probate court to "reopen the administration and assert entitlement to the proceeds." *See also* Fla. Admin Code R. 69I-44.021(1) ("Petitions for funds held pursuant to [section 737.102] are to be filed initially with the court that directed the deposits of the funds with the Chief Financial

10

Officer.").[4]  The Department has no basis to interpret its duty to determine the "merits" here to include a second determination of entitlement or an appellate-like review of the probate court's decision.

The Department ignored the probate court's orders finding the ten claimants were each entitled to a particular portion of Mrs. Rigley's estate.  Instead, the Department rejected the probate court's finding and required Choice Plus to again present evidence of entitlement, despite the fact that the evidence had already been accepted and ruled upon by the probate court.  Such action amounted to a wholesale rejection of the probate court's orders in contravention to section 732.107(3).  If the Department had the ability to make an independent determination on entitlement of escheated funds, it would render the need to first petition the probate court meaningless.  *See Goode*, 830 So. 2d at 824.

The Department's reading also raises separation of powers concerns.  The probate court's order was binding on the Department.  Under Article V, section 20(c)(c) circuit courts have jurisdiction pertaining to courts of probate.  The Department overstepped its authority by interpreting section 717.124 in such a way as to allow it to readjudicate the issue of entitlement in contravention to the probate court's order.  This was error and resulted in a final order that exceeded the Department's authority by rejecting an order of an Article V court.  *See Canney v. Bd. of Public Instruction of Alachua Cty.*, 278 So. 2d 260, 262 (Fla. 1973) ("As a general rule administrative agencies have no general judicial powers, notwithstanding they may perform some quasi-judicial duties, and the Legislature may not authorize officers or bodies to exercise powers which are essentially judicial in their nature.").  If the Department believed that Choice Plus failed to substantiate that the ten claimants were Mrs. Rigley's beneficiaries, the Department should have intervened in the probate court proceedings, which it did not do.

---

[4] Rule 69I-44.021 was repealed by the Department in 2016 because the rule had been "superseded by the enactment of section 717.124(8) in 2013."

### *Conclusion*

Choice Plus presented a complete claim as required of it under section 717.124 that included the order from the probate court directing the Department to disburse the estate funds. While the Department has a general duty to safeguard the estate funds in its possession, it overstepped that authority here by administratively invalidating the probate court's order. We reverse the final order on appeal and remand with instructions to grant Choice Plus's claim.

REVERSED and REMANDED.

LEWIS and RAY, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Seann M. Frazier, of Parker Hudson Ranier & Dobbs, Tallahassee, for Appellant.

Lori Lynn Jobe and Josephine A. Schultz, Assistant General Counsels, Tallahassee, for Appellees.