963 So.2d 940 (2007)
TOWN OF LAKE PARK, Appellant,
v.
William F. GRIMES, Jr., Joanne E. Grimes, his wife, and Household Properties Corp., a Florida corporation, Appellees.
No. 4D06-4591.
District Court of Appeal of Florida, Fourth District.
September 5, 2007.
*941 Thomas J. Baird and Karen E. Roselli of Baird & Roselli, North Palm Beach, for appellant.
No brief filed for appellees.
TAYLOR, J.
The Town of Lake Park ("the Town") appeals an order which awarded a foreclosure sale surplus to appellees William and Joanne Grimes, the former owners of the property. The Town claimed it was entitled to the surplus for payment towards code enforcement liens against the property. We agree and reverse.
On April 16, 2003, the Grimeses executed a note and mortgage in the amount of $79,950.00, encumbering their home. They accumulated fines from the Town totaling $464,914.19, due to repeated code violations. The orders imposing per diem fines are dated November 21, 2002, May 4, 2004, November 18, 2004, July 7, 2005, and December 1, 2005.
On July 15, 2005, Mortgage Investors I, LLC filed its mortgage foreclosure complaint against the subject property, naming the Grimeses and the Town as defendants. The Town answered, alleging the priority of its liens.
On September 27, 2005, the trial court entered an order foreclosing the mortgage and ordering public sale of the property. The public sale occurred on January 5, 2006. The property was sold to Household Properties Corp. (HPC) for $151,732.50. After the mortgagee was paid a judgment of $99,977.64, a surplus of $51,754.66 remained in the court registry. Title to the property was transferred to HPC on January 17, 2006, pursuant to a Certificate of Title, which was recorded the following day.
On January 18, 2006, the Grimeses entered into an agreement with HPC wherein they assigned to HPC 70% of the surplus, plus attorney's fees, in exchange for HPC's "service" of collecting the surplus for them. The Grimeses continued to reside at the subject property for a short time pursuant to a lease agreement with HPC. According to the Town, the Grimeses then vacated the property. Although the date of their departure is uncertain, it was apparently before HPC sold the property to the new owner on April 28, 2006.
*942 On May 10, 2006, the Grimeses and HPC moved for disbursement of the surplus to them. The following day, the Town moved for payment of the surplus towards its liens against the subject property. This action was consolidated with a declaratory action brought by the Grimeses and HPC against the Town over entitlement to the surplus.
The Town filed an affidavit of James D. Ryan, Esq., who stated that:
6. During the time which Defendants William F. Grimes Jr. and Joanne E. Grimes owned the Property numerous valid liens were recorded against the property by Lake Park. As the junior lienholder at the time of foreclosure, Lake Park is entitled to payment on its valid liens.
. . . .
8. The former owners the "Grimes" homestead status is irrelevant because on the face of their motion for release of the funds it is clear they have displayed an intent to not use such surplus for acquisition of another homestead but instead have assigned 70% of the surplus to another and have pledged the balance for attorney fees.
The Grimeses and HPC presented an affidavit from attorney Preston J. Fields, Sr., which stated:
That upon information and belief, the subject real property was the homestead real property of Mr. and Mrs. Grimes. That if the real property foreclosed in the instant matter was the homestead real property of WILLIAM F. GRIMES, JR., and JOANNE E. GRIMES, prior to May 8, 2003, and continuing up through and including September 27, 2005, the date of entry of the Final Judgment of Mortgage Foreclosure, the Code Enforcement Liens set forth in Paragraphs 4(b)(c)(d) and (e) above, are also unenforceable against the subject real property, and the net surplus funds, pursuant to Article X, Section 4, of the Florida Constitution, as constitutional prohibition takes priority over the debt or lien and renders the same unenforceable. Miskin v. City of Fort Lauderdale, 661 So.2d 415 (Fla. 4th DCA 1995).
At the hearing on the cross-motions for recovery of the surplus, the parties stipulated that the property was, in fact, the Grimeses' homestead from March 29, 1985 until January 17, 2006, the date the property was transferred to HPC. The trial court determined that the code enforcement liens were not entitled to share in the surplus funds and awarded the surplus to the Grimeses.
Florida's provision for homestead exemption is found in the Florida Constitution. Art. X, Section 4 of the Florida Constitution states that, with certain exceptions, "no judgment, decree or execution shall be a lien" on homestead property. The homestead exemption must be liberally construed in the interest of protecting the family home. Havoco of Am., Ltd. v. Hill, 790 So.2d 1018, 1020 (Fla. 2001). However, the exemption is not to be liberally construed so as to make it an instrument of fraud or imposition on creditors. Id.
Section 162.09, Florida Statutes, authorizes county or municipal code enforcement boards to levy fines and impose liens on the deficient property. However, it states:
No lien created pursuant to the provisions of this part may be foreclosed on real property which is a homestead under s. 4, Art. X of the State Constitution.
§ 162.09(3), Fla. Stat. (2006).
Relying on language in Demura v. County of Volusia, 618 So.2d 754, 756 (Fla. 5th DCA 1993), HPC suggests that the *943 subject liens were void and thus never subject to enforcement. In Demura, homeowners sought to remove a cloud from the title of real property which they claimed as homestead. The alleged cloud was a personal judgment lien against the homeowners that arose from fines that had been imposed by Volusia County against the homeowners for county code violations. The fifth district stated:
Although the statute merely provides that any lien created pursuant to an administrative fine may not be foreclosed on real property which is homestead, the Constitution itself goes much farther: No such lien exists as to such homestead property. Since that is true, the mere recording of the order against the Demuras cannot constitute a cloud against their homestead property.
Id. However, later in the opinion, the fifth district clarified that if the homestead property were sold and the proceeds of the sale not reinvested within a reasonable time, "those proceeds could be reached by creditors such as the County." Id. (citing Orange Brevard Plumbing & Heating Co. v. La Croix, 137 So.2d 201, 206 (Fla.1962)).
In Miskin v. City of Fort Lauderdale, 661 So.2d 415, 416 (Fla. 4th DCA 1995), which involved an attempt to remove a code enforcement lien as a cloud on title, we stated:
More importantly, contrary to Miskin's assertion, the prohibition of the constitutional provision is a prohibition against the use of process to force sale of homestead property and does not invalidate the debt or lien. Thus, the constitutional prohibition takes priority over the debt or lien and renders the same unenforceable. The legislature recognized this fact in determining that an enforcement board order should not be considered a judgment except for enforcement proceedings. § 160.09(3), Fla. Stat. (1993). Accordingly, the mere recording of the order in the instant case does not constitute a cloud upon Miskin's homestead property. However, if Miskin's property somehow lost its homestead status, the City would be able to enforce the order as a lien against the property.
Id. (citations omitted).
The critical issue in this case is whether the surplus retained homestead status. In La Croix, a judgment creditor sought to levy against the proceeds from a voluntary sale of the judgment debtor's homestead property. The Florida Supreme Court stated:
After a full consideration of the applicable authorities representing both views on the issue before us, and in recognition of the liberal interpretation of the homestead exemption to which this court is committed, we hold the proceeds of a voluntary sale of a homestead to be exempt from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time. Moreover, only so much of the proceeds of the sale as are intended to be reinvested in another homestead may be exempt under this holding. Any surplus over and above that amount should be treated as general assets of the debtor. We further hold that in order to satisfy the requirements of the exemption the funds must not be commingled with other monies of the vendor but must be kept separate and apart and held for the sole purpose of acquiring another home. The proceeds of the sale are not exempt if they are not reinvested in another homestead in a reasonable *944 time or if they are held for the general purposes of the vendor.
137 So.2d at 206 (underlined emphasis added). Although La Croix involved a voluntary sale, rather than a forced sale, we see no reason why this should make a difference in our analysis.
The parties stipulated that the property was homestead until January 17, 2006. The Grimeses' claim that the surplus enjoyed the same homestead protection as the property, depended on proof that the Grimeses had an "abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time." But, the Grimeses did not offer any proof of such intent. In the absence of competent substantial evidence to that effect, the trial court was compelled to rule for the Town. We note the Town's argument that the Grimeses' agreement for HPC to receive 70% of the surplus, plus any attorneys fees incurred, serves as positive evidence that the Grimeses had no such intent. In any event, because the burden of proof was on the Grimeses, and they failed to meet their burden to prove an intent to reinvest in another homestead, we reverse the order awarding the surplus to the Grimeses.
Reversed and remanded.
POLEN and STEVENSON, JJ., concur.