COPE, J.
 

 The question in this appeal is whether the trial court correctly disposed of the surplus existing after a foreclosure sale. We conclude that the trial court was correct.
 

 Defendant-appellee Sheila Edgehill owned a home on which there were two mortgages, the first mortgage being held by Wells Fargo Bank, N.A., and the second mortgage being held by plaintiff-appellant Richard Suarez. After the death of Ms. Edgehill’s husband, the mortgages went into default.
 

 In January 2008, Wells Fargo filed a foreclosure action in which Mr. Suarez and Ms. Edgehill were defendants. Wells Fargo filed its notice of lis pendens on September 8, 2007. Ms. Edgehill was the owner of the property at that time.
 

 In March 2008, Mr. Suarez filed a separate foreclosure action against Ms. Ed-gehill, seeking to foreclose his second mortgage. Mr. Suarez obtained a final judgment of foreclosure and purchased the property at a foreclosure sale. There is no issue in this appeal regarding the disposition of proceeds from that sale. In June 2008, the circuit court clerk issued a
 
 *411
 
 certificate of title to Mr. Suarez. As a result, Mr. Suarez became the owner of the property, subject to the existing Wells Fargo first mortgage.
 

 Thereafter there was a foreclosure sale pursuant to Wells Fargo’s final judgment of foreclosure. At that sale, Mr. Suarez purchased the property. The sale generated a surplus of $20,738.65. Ms. Edgehill and Mr. Suarez both claimed entitlement to the surplus. The trial court awarded the surplus to Ms. Edgehill and Mr. Suarez has appealed.
 

 In 2006, the legislature amended the provisions of chapter 45, Florida Statutes, relating to the disposition of the proceeds of a judicial sale. Ch. 2006-175 §§ 1-5, Laws of Fla. The amended statute defines an “Owner of record” as “the person or persons who appear to be owners of the property that is the subject of the foreclosure proceeding on the date of the filing of the lis pendens.” § 45.032(l)(a), Fla. Stat. (2008) (emphasis added). There is “a rebuttable legal presumption that the owner of record on the date of the filing of the lis pendens is entitled to surplus funds after payment of subordinate lienholders who have timely filed a claim.”
 
 Id.
 
 § 45.032(2). The legislature went on to say, “It is the intent of the Legislature to abrogate the common law rule that surplus proceeds in a foreclosure case are the property of the owner of the property on the date of the foreclosure sale.”
 
 Id.
 
 Presumptively, therefore, Ms. Edgehill is entitled to the surplus.
 

 The statute spells out the circumstances under which the presumption of ownership may be rebutted.
 
 Id.
 
 § 45.033(2). One such option involves demonstrating the existence of an involuntary transfer or assignment. This part of the statute states:
 

 (2) The presumption may be rebutted only by:
 

 [[Image here]]
 

 (b) The grantee or assignee proving that the grantee or assignee is a grantee or assignee by virtue of an involuntary transfer or assignment of the right to collect the surplus. An involuntary transfer or assignment may be as a result of inheritance or as a result of the appointment of a guardian.
 

 Mr. Suarez obtained title to the property in June 2008, as a result of the foreclosure sale on the second mortgage. He maintains that since he was the owner of the property at the time of the July 2008 foreclosure sale on the Wells Fargo mortgage, he is entitled to disbursement of the surplus. We do not agree.
 

 The statute specifically says — twice— that the legislature is abrogating “the common law rule that surplus proceeds in a foreclosure case are the property of the owner of the property on the date of the foreclosure sale.”
 
 Id.
 
 §§ 45.032(2), 45.033(1). Mr. Suarez is arguing that since he obtained title prior to the Wells Fargo foreclosure sale, it follows that he is to receive the surplus. The statute specifically rejects that analysis.
 

 The language of paragraph 45.033(2)(b) is instructive. It does not talk about transfer of title. Instead the language refers to “an involuntary transfer or assignment of the right to collect the surplus.” (Emphasis added). Under the statute, the relevant date for determining the “owner of record” is the date of the filing of the lis pendens,
 
 id.
 
 § 45.032(l)(a), and the question in the present case is whether there has been an involuntary transfer of that right. As the legislature has explained, an involuntary transfer could occur if the owner of record dies, so the right to receive the surplus passes to the heirs, or if a guardian is appointed for the owner of record. Mr. Suarez’s purchase at the first foreclosure sale accomplished a transfer of title, but did not (under this statute) accomplish an involun
 
 *412
 
 tary transfer “of the right to collect the surplus.”
 
 Id.
 
 § 45.033(2)(b).
 

 For the stated reasons, we conclude that the trial court correctly awarded the surplus to Ms. Edgehill.
 
 [1]
 
 The parties have debated whether the decision in
 
 Town of Lake Park v. Grimes,
 
 963 So.2d 940 (Fla. 4th DCA 2007), has application to this case. That case involved the question of whether a subordinate lienor was entitled to receive the surplus from a foreclosure sale, which is not the issue here. In the present case, all subordinate liens were paid.
 
 See
 
 § 45.032(1)(b), (c), Fla. Stat. (2008). The events in
 
 Town of Lake Park
 
 took place prior to the July 1, 2006 effective date of chapter 2006-175, Laws of Florida. The present case is controlled by the amended statute.
 

 Affirmed.
 
 [2]
 

 [1]
 

 . The parties are in agreement on the operative facts of this case. Because Mr. Suarez has not provided a transcript of the hearing in the trial court, we have no way of knowing whether the above provisions of chapter 45 were argued to lire trial court. Even if these portions of statute were not called to the trial court’s attention, we may properly consider them under
 
 Dade County Sch. Bd. v. Radio Station WQBA,
 
 731 So.2d 638 (Fla.1999).
 

 [2]
 

 . For legislative history of chapter 2006-175, Laws of Florida, see House of Representatives Staff Analysis, House Bill 65 (April 20, 2006).
 
 See generally
 
 The Florida Bar,
 
 Creditors’ and Debtors’ Practice in Florida
 
 § 3.69 (2007).