[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 14-10826; 14-11149
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-02197-JDW,
Bkcy No. 8:12-bk-00562-MGW

IN RE: RONALD BIFANI,

                                        Debtor.
_____

ARLENE M. LAMARCA,

                                        Plaintiff-Appellee
                                        Cross Appellant,

                    versus

SHARI STREIT JANSEN,
Chapter 7 Trustee,

                                        Defendant-Appellant
                                        Cross Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(September 11, 2014)

Before WILSON, ROSENBAUM and KRAVITCH, Circuit Judges.

PER CURIAM:

Chapter 7 Trustee Shari Streit Jansen appeals the district court's reversal of the bankruptcy court's imposition of an equitable lien against property the bankruptcy court concluded was fraudulently transferred from debtor Ronald Bifani to defendant Arlene LaMarca.  LaMarca cross-appeals the bankruptcy and district courts' conclusions that Bifani fraudulently transferred the property to her under the Florida Uniform Fraudulent Transfer Act (FUFTA), Fla. Stat. § 726.101 *et seq*.   After a thorough review, we affirm in part and reverse in part.

## I.

Ronald Bifani owed several properties in the Breckenridge, Colorado area. In 2000, Bifani met LaMarca and, within a few years, LaMarca moved into a home Bifani owned.  In 2006, Bifani transferred this property at 207 North Ridge Street to LaMarca.  In 2009, LaMarca sold the property, paid off the outstanding mortgage, and gave half the $341,297 profit to Bifani.

Shortly thereafter, in June 2009, Bifani transferred additional properties at 1400 Golden Eagle Road and 988 Bald Eagle Road to LaMarca.  It is these transfers that form the basis of the Trustee's action.  LaMarca sold the Golden Eagle Road property, paid off the mortgage, and in September 2009, used the

2

$669,233 proceeds to purchase a home in Sarasota, Florida where she and Bifani currently reside.[1]

Between 2001 and the time of these transfers, Bifani was involved in a state-court lawsuit brought against him by a former business partner. After the case had been dismissed and reinstated several times, in June 2009, the state court scheduled a status conference. In December 2012, the state court ruled against Bifani and ordered him to pay judgment in excess of $166,000. The following month, Bifani filed for Chapter 7 bankruptcy.

In the bankruptcy proceeding, LaMarca filed claims as a creditor based on promissory notes Bifani signed in connection with a line of credit and various loans LaMarca made to him. Specifically, LaMarca indicated that Bifani owed her over $171,000 for a loan she made after the sale of the North Ridge Street property; over $450,000 for a line of credit she gave Bifani; and in excess of $131,000 in personal loans. Bifani also owed her over $242,000 for mortgages on the Bald Eagle and Golden Eagle properties. Jansen, as the Chapter 7 Trustee, filed a second amended complaint in the bankruptcy proceeding, seeking to recoup the money received from the transfers of the Bald Eagle and Golden Eagle properties and the sale of the Golden Eagle property. Jansen alleged that the transfers were fraudulent because they were made with the actual intent to hinder,

---

[1] LaMarca admitted that she used the proceeds from the Golden Eagle sale to purchase the Sarasota property.

delay, or defraud creditors under FUFTA, Fla. Stat. §§ 726.105(1)(a) and 726.106(1). Jansen also sought an equitable lien against the Sarasota property because the funds obtained as a result of the fraudulent transfer of Golden Eagle were used to purchase the Sarasota property.

The bankruptcy court granted summary judgment in Jansen's favor, finding that Bifani made the transfers with actual intent to delay or hinder. In reaching this conclusion, the bankruptcy court focused on the following facts: the relationship between Bifani and LaMarca, Bifani's continued possession of the property, the pending lawsuit, and the lack of any reasonably equitable value for the transfers. The bankruptcy court noted that there was no evidence to show that LaMarca credited Bifani's outstanding loans with the value of the properties. As to the equitable lien, the bankruptcy court found that a lien was proper when the property was obtained through ill-gotten proceeds, even if the property was subject to a homestead exemption. In an amended judgment, the bankruptcy court imposed the equitable lien on the Sarasota property and awarded Jansen $661,000.

LaMarca appealed to the district court, arguing that summary judgment was improper on factual questions such as actual fraud, and that the imposition of an equitable lien against a homestead was not permitted by the Florida Constitution Article X, section 4. The district court affirmed the bankruptcy court's conclusions as to actual fraud, but reversed the equitable lien as unconstitutional. Jansen now

4

appeals the denial of the equitable lien.  LaMarca cross-appeals the determination that the transfers were fraudulent.

## II.

We have jurisdiction over this matter under 28 U.S.C. § 158(d).  "As the second court of review of a bankruptcy court's judgment, we independently examine the factual and legal determinations of the bankruptcy court and employ the same standards of review as the district court." *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 698 (11th Cir. 2005) (internal citation and quotation marks omitted). Because the district court made no factual findings in its function as an appellate court, our review is *de novo*. *Id.*  We review the findings of fact made by the bankruptcy court for clear error.  *Id.*  A factual finding is not clearly erroneous unless "this court, after reviewing all of the evidence, [is] left with the definite and firm conviction that a mistake has been committed." *Id.* (internal citation omitted). We review *de novo* "determinations of law, whether from the bankruptcy court or the district court." *Id.*  Summary judgment is appropriate where there is no genuine issue of material fact as to whether there was any actual intent to hinder, delay, or defraud the creditors.  *See, e.g.*, *In re XYZ Options, Inc.*, 154 F.3d 1262, 1272 (11th Cir. 1998) (reversing summary judgment where there were genuine issues of fact).

## III.

Under FUFTA's actual fraud provision, a

transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

Fla. Stat. § 726.105(1)(a).  In determining whether a transfer was made with an actual intent to hinder, delay, or defraud, courts look to the statutory "badges of fraud."  *See* Fla. Stat. § 726.105(2).  These include, relevant to this appeal, whether: the transfer was to an insider, the debtor retained control of the property after the transfer, before the transfer occurred the debtor had been sued, and the value of consideration was reasonably equivalent to the value of the asset or the amount of the obligation incurred.  Fla. Stat. § 726.105(2)(a)-(k); *see also Wiand v. Lee*, 753 F.3d 1194, 1200 (11th Cir. 2014).

"The existence of badges of fraud creates a prima facie case and raises a rebuttable presumption that the transaction is void."  *Gen. Elec. Co. v. Chuly Int'l, LLC*, 118 So.3d 325, 327 (Fla. Dist. Ct. App. 2013) (citation and internal quotation omitted). Once there has been a showing of a prima facie case under FUFTA, the burden shifts to the debtor to show the transfer was not made to hinder or delay or defraud creditors.  *Mejia v. Ruiz*, 985 So.2d 1109, 1113 (Fla. Dist. Ct. App. 2008).

Although "[a] single badge of fraud may only create a suspicious circumstance and may not constitute the requisite fraud to set aside a conveyance

6

[,] several of them when considered together may afford a basis to infer fraud." *Wiand*, 753 F.3d at 1200 (citation omitted).  And although FUFTA lists a number of badges of fraud, "[i]t is clear from the language of the statute that in determining intent, consideration may be given to factors other than those listed."  *Id.* (citation and internal quotation omitted).  Thus, "[c]ourts may take into account the circumstances surrounding the conveyance." *Gen. Elec. Co.*, 118 So.3d at 327 (citation omitted).   Nevertheless, "in fraud cases, summary judgment is available only in extraordinary circumstances." *Nationsbank, N.A. v. Coastal Utils., Inc.*, 814 So.2d 1227, 1231 (Fla. Dist. Ct. App. 2002).

LaMarca challenges the bankruptcy court's conclusion that the transfers of the Golden Eagle and Bald Eagle properties were fraudulent.  She contends that questions of fraud are fact-specific and thus the court erred by granting summary judgment.  LaMarca asserts that she has a good faith defense—Bifani's repayment of a debt to her—to rebut the badges of fraud.

Here, the bankruptcy court found four badges of fraud present, satisfying the prima facie showing of actual fraud.  The court then found that LaMarca had offered no evidence to rebut this presumption and, because the evidence was one sided, granted summary judgment.  We will address each finding in turn.

First, the bankruptcy court found that LaMarca was the functional equivalent of an "insider" based on her long-term relationship and cohabitation with Bifani.

7

The FUFTA defines an "insider" to include relatives of the debtor or the debtor's general partner. Fla. Stat. § 726.102(8)(a). But nothing in the statute limits the definition to exclude close personal friends. *See id.* (using the language "includes"); *see also United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014) ("The items that follow each use of the word 'includes' in the statute are non-exhaustive examples . . . ." (internal citation omitted)).

Even if the definition of "insider" did not include LaMarca, the courts were permitted to consider LaMarca's relationship and cohabitation with Bifani along with the other badges of fraud. *See Gen. Elec. Co.*, 118 So.3d at 327 ("Courts may take into account the circumstances surrounding the conveyance."). Moreover, "[a] close relationship between a transferor debtor and a transferee is a factor equivalent to a badge of fraud which should be considered in determining fraudulent intent." *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1499 (11th Cir. 1997) (noting that a close relationship, whether personal or business, can equate to a badge of fraud). Thus, the bankruptcy court did not err in considering the relationship between Bifani and LaMarca as the equivalent of a badge of fraud.

The court next considered whether Bifani retained control of the property after the transfer. The record in this case shows that, even after

8

Bifani deeded the North Ridge property to LaMarca, he continued to reside there, and he received half the profit once LaMarca sold the property. Neither Bifani nor LaMarca offered an explanation as to why the property was transferred in this manner. Moreover, LaMarca used the proceeds from the sale of Golden Eagle to purchase the Sarasota property in which she and Bifani currently live, giving Bifani at least some control over the various properties after the transfers. Thus, the bankruptcy court did not err when it concluded that Bifani retained some control over property he transferred to LaMarca.

Additionally, the court looked at the timing of the transfer in relation to the lawsuit filed against Bifani. Bifani does not dispute that he was being sued by his former business partner at the time of the transfers, but he noted that the case had been pending since 2001. But, the week before Bifani transferred the properties to LaMarca, the state court had scheduled a status conference in that case. This timing, as the bankruptcy court found, calls into question Bifani's motive for transferring property, and thus was properly considered as a badge of fraud.

Finally, the court evaluated whether the value of consideration was reasonably equivalent to the value of the asset or the amount of the obligation incurred. In his deposition, Bifani admitted that LaMarca

9

provided no consideration in exchange for the deeds to the properties and that he transferred the properties to calm her insecurities about money she had lent him.[2]  Both Bifani and LaMarca claimed in their depositions that the amount LaMarca loaned Bifani exceeded one million dollars, but the properties Bifani transferred to LaMarca only covered part of that amount. They asserted that the remaining sum of about $130,000 was not paid and thus was listed as debt in Bifani's bankruptcy proceeding.  These statements were not supported by the record, which showed that LaMarca never credited Bifani for payment on the debt.  In light of this evidence, the bankruptcy court properly concluded that the transfers lacked any reasonably equivalent consideration.

We cannot conclude that the bankruptcy court erred when it found that the badges of fraud established a prima facie case that the transfers were fraudulent.  The presence of these badges of fraud and the attendant circumstances were sufficient to meet the trustee's burden.

---

[2] There are discrepancies in the record between Bifani's and LaMarca's account of the transfers, the reasons for them, and the basis of their relationship.  For example, Bifani stated in his deposition that the two lived together to share expenses because they were both on social security.  But LaMarca stated that the two were good friends and traveled together, and she described herself as a "spoiled little rich kid."  Additionally, LaMarca seemed to have endless funds with which to bankroll Bifani, an unlikely scenario if the two lived together simply to share expenses.  Moreover, once they moved to the Sarasota property, Bifani paid only the phone and internet; LaMarca paid the rest of the expenses.  Bifani also stated that he paid LaMarca a commission to sell the North Ridge property, but LaMarca denied this.  Finally, Bifani testified that LaMarca gave him half the proceeds of the North Ridge sale, but LaMarca characterized this as yet another loan.

10

Thus, the burden shifted to LaMarca to show the transfers were not fraudulent. LaMarca argued that the transfers were made in good faith to pay off debts and lines of credit Bifani owed her. But, as the bankruptcy court found, there was no evidence in the record to support her claim. Rather, the evidence showed that Bifani rarely made payments on the loans he owed LaMarca, neither Bifani nor LaMarca kept track of the payments made, and LaMarca never demanded payment or put the loans into default. Moreover, even after the transfers of property, LaMarca still considered the loan outstanding, and she filed a claim for the loan amount in Bifani's bankruptcy proceeding. In light of the one-sided evidence, we conclude that the material facts were not genuinely in dispute and thus the bankruptcy court properly granted summary judgment on the issue of actual fraud.

## IV.

Having concluded that the bankruptcy court properly granted summary judgment in favor of the Chapter 7 Trustee, we turn to the Trustee's request for an equitable lien, which the bankruptcy court granted and the district court reversed.

Under Florida law,

> [t]here shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house . . . the following property owned by a natural person: (1) a homestead . . . .

11

Fla. Const. Art. X, § 4.  This homestead exemption is liberally construed, but not so liberally construed "so as to make it an instrument of fraud or imposition on creditors." *Town of Lake Park v. Grimes*, 963 So.2d 940, 942 (Fla. Dist. Ct. App. 2007).  Thus, Florida law is well-settled: A homestead "cannot be employed as a shield and defense after fraudulently imposing on others." *Jones v. Carpenter*, 106 So. 127, 130 (Fla. 1925); *Palm Beach Savs. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So.2d 267, 270 (Fla. 1993); *cf. Havoco of Am., Ltd. v. Hill*, 790 So.2d 1018 (Fla. 2001) (holding the equitable lien is still a viable remedy for creditors in cases where funds obtained fraudulently were used directly to purchase a homestead, but the homestead exemption will apply to property purchased using funds legitimately obtained even if the property is used to shield funds from creditors).

Although the state constitution lists only three specific exemptions, Florida courts have "invoked equitable principles to reach beyond the literal language of the excepts" where "funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead." *Havoco*, 790 So.2d at 1028; *see also Zureikat v. Shaibani*, 944 So.2d 1019, 1024 (Fla. Dist. Ct. App. 2006) (affirming an equitable lien placed on a homestead where proceeds obtained from fraudulent conduct were used to invest in, purchase, or improve the homestead).

Jansen argues that the bankruptcy court properly applied the lien and the district court erred by reversing it because this case falls outside of *Havoco*.

12

LaMarca argues that the district court properly denied the equitable lien because in cases in which an equitable lien on the homestead was permitted, the homeowner engaged in some type of criminal conduct.

We agree with the bankruptcy court's analysis and conclude that the equitable lien on the Sarasota property was proper. Under Florida law, homestead property purchased with funds obtained by fraud is not exempted from equitable liens. *See Havoco*, 790 So.2d at 1028. The facts of this case do not fall within *Havoco*'s exception because the funds used to purchase the Sarasota property were obtained through Bifani's fraudulent transfers. *See id.*; *cf. In re Chauncey*, 454 F.3d 1292, 1294 (11th Cir. 2006) (noting the *Havoco* rule and concluding that an equitable lien was improper because the debtor had obtained the funds used to purchase the homestead legitimately and not by fraud).

LaMarca and Jansen argue whether an equitable lien is only available in cases of equitable subrogation. Although several cases discuss liens in the context of subrogation, none of the cases limits the availability of an equitable lien to cases of subrogation. *See, e.g.*, *Smith v. Smith*, 761 So.2d 370, 373 (Fla. Dist. Ct. App. 2000) ("[T]he supreme court has limited the exception allowing an equitable lien on homestead to those cases where the owner of the property has used the proceeds from fraud or reprehensible conduct to either invest in, purchase, or improve the homestead."). We reiterate, under well-settled Florida law, an equitable lien is

13

available where the property owner seeks a homestead exception for property purchased with funds obtained by fraud.

That the fraud occurred in a bankruptcy proceeding rather than a criminal offense is irrelevant. The purpose of the lien is to prevent unjust enrichment. Allowing Bifani to fraudulently transfer property to LaMarca to avoid his creditors, allowing LaMarca to use the proceeds from the properties to purchase a home, and then allowing Bifani to live in that home with LaMarca rent free with no remedy for the bankruptcy trustee is entirely unjust. Accordingly, we conclude that the bankruptcy court properly imposed an equitable lien on the Sarasota property, and the district court erred by reversing. The district court's order is affirmed in part, reversed in part, and remanded for the district court to impose the equitable lien.

**AFFIRMED in part, REVERSED in part.**